Kenneth Dewayne EDWARDS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05-02-00036-CR, 05-02-00037-CR.

Court of Appeals of Texas, Dallas.

May 19, 2003.

Deborah Farris, Dallas, for Appellant.

William T. (Bill) Hill, Jr., Cheryl D. Holder, Dallas, for State.

Before Justices JAMES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

Kenneth Dewayne Edwards appeals his conviction by a jury for the capital murder of Hong S. Lee and Me Hyee Lee. He was sentenced to mandatory life imprisonment by the court. After his conviction for capital murder, appellant's probated sentence for robbery was revoked, and he was sen-

tenced to ten years' imprisonment, to be served consecutively to his sentence for capital murder.

Appellant raises the following nine issues to challenge his capital murder conviction: 1) the trial court abused its discretion by refusing to declare a mistrial after a juror became physically ill; 2) the evidence is legally insufficient to prove that appellant knowingly and intentionally caused the death of Mr. Lee and his mother, Mrs. Lee, by striking them with various objects; 3) the evidence is factually insufficient to prove that appellant knowingly and intentionally caused the death of Mr. Lee and his mother, Mrs. Lee, by striking them with various objects; 4) there is insufficient evidence to establish that appellant was a party to the offense as charged in the indictment; 5) there is insufficient evidence to corroborate the testimony of accomplice witness Demarcus Joe; 6) there is insufficient evidence to corroborate the testimony of accomplice witness Jermaine Galloway; 7) a rational trier of fact could have found appellant guilty only of manslaughter of Mr. Lee; and 8) a rational trier of fact could not have found appellant guilty of capital murder of Mrs. Lee.

In a single issue as to his ten-year sentence for robbery, appellant asserts it was "illegal" for the trial court to order him to serve this sentence as a consecutive sentence after his life sentence for capital murder has been completed. For the reasons set forth below, we affirm the trial court's judgments.

### Factual and Procedural Background

Hong S. Lee and his mother, Me Hyee Lee lived together in DeSoto, and worked in the family-owned cleaning business called GLO Cleaners in Dallas. Mr. Lee and his mother, Mrs. Lee, were brutally murdered. Mr. Lee had dated a woman named Kathy Adams, who lived with him while they were dating. Before dating Lee, Ms. Adams dated appellant. After Mr. Lee and Ms. Adams split up, Ms. Adams's cousin, Demarcus Joe, was released from jail and lived with the victims. Joe was paid to drive Mrs. Lee back and forth to work and to run errands. Also, Joe was given unlimited access to the victims' automobiles and home. At trial, Joe testified he was told by his probation officer that he was required to live within the city limits. Therefore, he had to move out of the Lee home. Joe testified that on the day of the murders, he went to the Lee home to retrieve his possessions. He brought appellant, Jermaine Galloway, and Jacob Jackson with him.

Galloway testified that at around 9 p.m. on February 28, 2001, the night of the murders, Joe arrived at his house with appellant. Joe told Galloway that he and appellant were going to "hit a lick" (i.e. commit a robbery). At about 9:30 p.m. that evening Joe, appellant, Galloway, and Jackson left Galloway's home in the Lees' black Jeep to go to the Lee home. Joe entered the home using the garage door opener and house keys. Joe testified that they all sat down to talk to Mr. Lee. Mrs. Lee was in her bedroom. At this point, the testimony of Joe, Galloway, and appellant diverge, but they agree that the Lees were murdered and several items were stolen from the Lee home, including two TVs, a VCR, and some clothes.

During the murders, Mr. Lee was hit repeatedly with a fire extinguisher, a hammer, and a pole. He was also wrapped in a blanket, tied with an electrical cord, a plastic ball was placed in his mouth, and his mouth was taped shut. Mrs. Lee was hit in the head repeatedly with a hammer, was sexually assaulted with a hammer handle, was stabbed, and was jumped upon.

The pathologist testified that both of the Lees died of homicidal violence. The autopsy report on Mr. Lee mentioned: (a) blunt force head injuries including fractures, hemorrhages, abrasions, and lacerations; (b) incised wounds of the forehead; and (c) blunt force injuries of the trunk and extremities. The autopsy report on Mrs. Lee mentioned: (a) depressed upper left chest; (b) blunt force injuries including fractures, hemorrhages, contusions, lacerations, and abrasions; and (c) three stab wounds.

After the murders, the four men drove away in the Jeep and a Mustang owned by the Lees. They drove to a field where they left the Jeep after transferring most of the stolen goods to the Mustang. The larger TV would not fit in the Mustang and was abandoned in the field. The four men then drove to appellant's home where they left the stolen goods.

On March 2, 2001, the bodies of the Lees were discovered. While executing an arrest and search warrant at appellant's home, the police recovered the smaller stolen TV set and the VCR from the trash outside his house. The black Jeep and larger TV set were discovered in a field.

The police arrested appellant, Joe, Galloway, and Jackson. Galloway, age 15, pleaded guilty to the offense of aggravated robbery and testified for the State. Joe testified that he pleaded guilty to two offenses of capital murder and was sentenced to two sentences of life imprisonment, to be served consecutively. He then testified for the State.

#### DENIAL OF MOTION FOR MISTRIAL

In his first issue, appellant complains that the trial court abused its discretion by denying appellant's motion for mistrial after one of the jurors prejudiced the jury by becoming physically ill during the trial on the merits.

### A. Applicable Law

■ The decision to deny a motion for mistrial is within the discretion of the trial court. *See Rousseau v. State*, 855 S.W.2d 666, 684 (Tex.Crim.App.1993). A mistrial is an extreme remedy for prejudicial events occurring during the trial process. *Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim.App.1996). Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted. *Id.* The proper method to preserve error is to object, request the trial court to instruct the jury to disregard, and move for a mistrial. *See Cureton v. State*, 800 S.W.2d 259, 261 (Tex.App.-Houston [14th Dist.] 1990, no pet.).

### B. Application of Law to Facts

■ At about ten minutes before one o'clock during the testimony of the forensic pathologist and the display of autopsy photographs, one of the jurors stated that he needed a break. The court recessed the trial for lunch, and the juror stated that he needed to lie down. Outside of the presence of the jury, appellant moved for a mistrial based on the juror's illness as a result of seeing the autopsy photographs. The court denied the motion and stated that it was not sure the photographs were the reason the juror had to lie down. Apparently the juror had not eaten since early that morning and was feeling faint. After the lunch recess the court asked the juror how he felt and whether he had eaten anything. The juror responded that he felt fine and he had eaten. The pathologist continued her testimony without incident and with the introduction of approximately forty-five more photographs.

The court observed that it was not clear the juror's illness was in response to the photographs. We agree. Even if the juror was reacting to the photographs, his request for a break and to lie down was not so emotionally inflammatory as to prejudice the jury. *See Bauder,* 921 S.W.2d at 698. The trial court appropriately recessed the trial for lunch and ascertained that the juror had recovered before the trial proceeded. Appellant did move for a mistrial, but he did not request any curative instructions or specify in what manner the juror's illness had prejudiced the rest of the jury. *See Cureton,* 800 S.W.2d at 261. The trial court did not abuse its discretion in refusing to grant a mistrial. We resolve appellant's first issue against him.

## Legal and Factual Sufficiency of the Evidence of Guilt as Principal or Party

In his second and third issues, appellant complains that the evidence is legally and factually insufficient to support a finding that he knowingly and intentionally caused the death of Mr. Lee and Mrs. Lee by striking them with various objects. In his fourth issue, appellant complains that the evidence is insufficient to establish that he was a party to these offenses.

Appellant does not state specifically whether the claimed error relative to his status as a party is based on a measure of legal or factual sufficiency. However, we will analyze both.

We note that if the evidence of his guilt is sufficient either as a principal or as a party, we must affirm the jury's verdict.

### A. Applicable Law

■ When reviewing the legal sufficiency of the evidence, this Court must examine the evidence in the light most favorable to the verdict to determine whether *any* rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State,* 905 S.W.2d 570, 574 (Tex.Crim. App.1995). In conducting a factual sufficiency review, this Court neutrally analyzes all of the evidence, both for and against the finding. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). This Court will reverse only if we determine the proof of guilt is so weak or the contrary proof so overwhelming that it renders the guilty verdict clearly wrong and unjust. *Id.* In conducting this review, we must be appropriately deferential to the fact finder's role. *Id.* at 8. Under either review, the fact finder is the exclusive judge of the witnesses' credibility and the weight to be given their testimony. Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *see Jones v. State,* 944 S.W.2d 642, 647–48 (Tex.Crim.App.1996).

A person commits murder if he intentionally or knowingly causes the death of an individual, Tex. Pen.Code Ann. § 19.02(b)(1) (Vernon 2003), and he commits capital murder if he murders more than one person during the same criminal transaction. *Id.* § 19.03(a)(7)(A).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. *Id.* § 7.01. A person is criminally responsible for an offense committed by another if, with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

■ In determining the sufficiency of the evidence under the law of parties, this Court may look to events occurring before, during, and after the offense, and may rely

on actions of the defendant that show an understanding and common design to commit the offense. *King v. State*, 29 S.W.3d 556, 564 (Tex.Crim.App.2000).

### B. Application of Law to Facts

#### 1. Legal Sufficiency

■■■ Joe and Galloway testified against appellant. Galloway testified that after they arrived at the Lee home, appellant went to use the bathroom. After appellant came out of the bathroom, he and Joe conferred together in the hall, within sight, but out of earshot of Galloway. Joe and appellant then followed Lee to the kitchen and attacked him. Joe returned to the room where Galloway sat, dragging Lee by his hair. Galloway testified that appellant was kicking Lee's body during this time. Galloway and Jackson joined in, hitting Lee with a fire extinguisher and a pole. Appellant then took the fire extinguisher from Jackson and hit Lee in the head with it about ten times. Meanwhile, Joe had gone to get a knife. Joe returned and covered Lee's face with a pillow and began stabbing him through the pillow. Joe then put a plastic ball in Lee's mouth and taped his mouth shut. Then, Joe and Galloway tied Lee with an electrical cord.

Joe testified that appellant initiated the attack on Mr. Lee after Mr. Lee referred to Kathy, appellant's former girlfriend, as "that fu____g bitch." Both Galloway and Joe testified that appellant had a gun.

Galloway also testified that Joe and appellant went into Mrs. Lee's bedroom before Galloway joined them. Galloway testified that when he entered the room, Joe was hitting Mrs. Lee on the head with the hammer, and he then began ramming the handle of the hammer into her vagina while saying "Take it bitch." At that point, appellant took the hammer from him and continued to abuse Mrs. Lee sexually with it while making moaning noises,

which Galloway interpreted as an attempt by appellant to be funny. Appellant then removed the hammer from Mrs. Lee and Jackson took it and began hitting her with it. Then, Joe and appellant, in turn, took the hammer and hit Mrs. Lee with it. While Galloway was stabbing Mrs. Lee, appellant and Joe both told him that he was not stabbing her hard enough. Later, appellant participated with the others in jumping on Mrs. Lee's legs, and Joe and Jackson tried to push a dresser on her.

To find appellant guilty of capital murder as a principal, the jury was required to find, beyond a reasonable doubt, that appellant knowingly or intentionally caused the deaths of Mr. Lee and Mrs. Lee during the same criminal transaction. *See* TEX. PEN.CODE ANN. §§ 19.02(b)(1), 19.03(a)(7)(A) (Vernon 2003). Galloway testified that appellant hit Mr. Lee on the head with a fire extinguisher about ten times, and took turns hitting Mrs. Lee with a hammer. The jury could have concluded from this testimony that appellant intended to cause the Lees' deaths. *See Manrique v. State*, 994 S.W.2d 640, 649 (Tex.Crim.App.1999) (a jury may infer intent from any facts which tend to prove its existence, including the acts, words and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims). Having considered the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found that appellant knowingly or intentionally caused the deaths of Mr. Lee and Mrs. Lee in the same criminal transaction. We resolve appellant's second issue against him.

#### 2. Factual Sufficiency

■■■ For a factual sufficiency review, we look at all the evidence to determine whether it is so weak as to make the verdict clearly wrong and manifestly un-

just or whether the adverse finding is just or whether the adverse finding is against the great weight and preponderance of the available evidence. *Johnson,* 23 S.W.3d at 11. Moreover, "as a general proposition, reviewing courts should at least mention what the parties assert is the most important or most relevant evidence supporting a claim that the evidence is factually insufficient." *Sims v. State,* 99 S.W.3d 600, 601 (Tex.Crim.App.2003).

In attacking the factual sufficiency of the evidence, appellant argues that Galloway and Joe are not reliable witnesses. Appellant offers his own version of the events that night.

Appellant testified that he had gone to the Lee house with the other three men, but said that he went to the bathroom for fifteen or twenty minutes. When he came out of the bathroom, appellant says that Joe was attacking Mr. Lee. Appellant testified that Joe pulled a gun on him and ordered him to sit down or he would be next. Then, appellant testified that he did not know Mrs. Lee was in the house and he did not participate in hurting her or stealing items from the Lee home. According to appellant, he took all of the stolen property back to his own home because Joe threatened him and he was afraid of Joe. To establish that he acted out of duress, appellant points to the testimony of Ms. Adams that Joe could be violent.

■ Appellant's testimony clearly conflicts with that of Joe and Galloway. However, questions concerning the credibility of witnesses and the weight to be given their testimony are to be resolved by the trier of fact. *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App.1997). The jury was in a position to evaluate the credibility of these witnesses and an appellate court must defer to that evaluation unless the record clearly reveals that a different re-sult is appropriate. *Johnson,* 23 S.W.3d at 8.

Appellant lists several points that he says reflect inconsistencies in the testimony of the witnesses against him, showing they are not reliable. Specifically, he points out that 1) the toxicology test on Mr. Lee was negative, even though Galloway testified that Mr. Lee smoked crack briefly the night he was murdered, and 2) Joe testified that he saw appellant stab Mr. Lee, but the pathologist testified that Mr. Lee did not have any stab wounds. Galloway testified that Joe stabbed Mr. Lee through a pillow on his face, and then both he and appellant stabbed Mr. Lee in the chest also. Although the pathologist testified that Mr. Lee did not have any stab wounds, he did testify that appellant did have incised wounds, such as the type caused by a knife blade, on the forehead. According to Galloway, Mr. Lee was wrapped in a blanket and a pillow during the attack.

We conclude that the bulk of the testimony of Galloway and Joe is consistent with appellant's guilt. In light of the tremendous violence done to the victims in this case, and the number of people involved in the assault, the discrepancies appellant points out are not determinative. Reviewing all the evidence in a neutral light, we cannot say the evidence of guilt is so obviously weak as to undermine confidence in the fact finder's determination or that the proof of guilt is greatly outweighed by contrary proof. *See Johnson,* 23 S.W.3d at 11. The evidence was factually sufficient for the jury to find that appellant knowingly or intentionally caused the death of Mr. Lee and Mrs. Lee as a principal. We resolve appellant's third issue against him.

### 3. Guilt as a Party

■ Appellant views this analysis as a simple one. In his fourth issue appel-

lant argues that his mere presence at the scene of the offense is insufficient to demonstrate his criminal responsibility as a party. Further, he argues that because, in his view, Joe and Galloway are unreliable witnesses, the requisite evidence is not present. However, in determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to commit the offense. *See King,* 29 S.W.3d at 564. Mere 'presence is not enough, but presence is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show the accused was a participant. *See Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim. App.1987). Finally, as noted previously, the credibility of witnesses and determination of the weight to be given their testimony will be determined by the trier of fact. *Cain,* 958 S.W.2d at 408. The appellate court must defer to the jury's decision in evaluating the factual sufficiency of the evidence unless another result is appropriate. *Johnson,* 23 S.W.3d at 8.

 Galloway testified that after appellant came out of the bathroom, Joe and appellant conferred with each other outside of everyone else's hearing. Appellant and Joe then began attacking Mr. Lee, and Galloway and Jackson joined in the attack. Galloway and Joe both testified that all four of the men participated in the brutality on both of the victims. Galloway testified that the four men took turns hitting Mr. Lee with various weapons, including a hammer and a fire extinguisher. Further, Galloway testified that when he was stabbing Mrs. Lee, appellant told him he was not stabbing hard enough. Thus, at the time of the offense, the evidence shows the parties were acting together, each contributing to their common purpose. *See King,* 29 S.W.3d at 564.

There was also evidence of a common purpose before and after the murders. According to Galloway, all four men went to the Lee home intending to commit a robbery and, in fact, took part in the robbery of the Lee home. After the robbery the four men left in the Lees' two cars, transferred all the stolen goods to one car, and then delivered all the stolen goods, except the larger TV, to appellant's home. Setting aside for a moment the proposition that appellant is alleged to have acted as a principal, we hold that there was sufficient evidence both legally and factually, to find that appellant encouraged and aided his accomplices in the murder of the Lees. Accordingly, the jury could conclude appellant was guilty as a party for these murders. We resolve appellant's fourth issue against him.

## SUFFICIENCY OF EVIDENCE TO CORROBORATE ACCOMPLICE TESTIMONY

### A. Applicable Law

 In his fifth and sixth issues appellant complains of the testimony of Joe and Galloway on the grounds that they are accomplices and there was insufficient evidence to corroborate their testimony. A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). Other evidence that the offense was committed is not enough in itself, but the other evidence need only tend to connect the defendant to the offense. *Cathey v. State,* 992 S.W.2d 460, 462 (Tex.Crim.App.1999). It is not necessary that the corroborating evidence directly connect the defendant to the crime

or that it be sufficient by itself to establish guilt. *Id.* If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, the requirement of article 38.14 has been fulfilled. *Id.* (citing *Gosch v. State*, 829 S.W.2d 775, 777 (Tex.Crim.App.1991)).

**B. Application of Law to Facts**

 Appellant cannot be convicted based on accomplice testimony alone. There must be other evidence that tends to connect appellant with the commission of the offense. *See Hernandez v. State*, 939 S.W.2d 173, 176 (Tex.Crim.App.1997). Appellant's own testimony placed him at the scene of the crime and in possession of property stolen from the home. Moreover, appellant's mother and sister both testified that on the night of the murders, appellant brought home a TV and a VCR, which they found would not work and then threw in the trash. A police officer testified that the TV and VCR were recovered from the trash. Appellant's testimony and the recovery of the stolen property from the trash outside his house are sufficient to connect appellant to the offense in order to corroborate the accomplice testimony. We resolve appellant's fifth and sixth issues against him.

**MANSLAUGHTER IN DEATH OF MR. LEE**

**A. Applicable Law**

The trial court included in its charge an instruction regarding the lesser included offense of manslaughter as authorized by article 37.08 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 37.08 (Vernon 1981). A person commits manslaughter if he "recklessly causes the death of an individual." TEX. PEN.CODE ANN. § 19.04 (Vernon 2003).

 The trial court also instructed the jury on appellant's affirmative defense of duress. It is an affirmative defense to

prosecution that the defendant engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. *Id.* § 8.05(a) (Vernon 2003). However, to prevail on the affirmative defense of duress, appellant was required to show by a preponderance of the evidence that he was compelled to engage in the proscribed conduct by threat of imminent death or serious bodily injury to himself or another. *Id.* § 2.04(d) (Vernon 2003); *see Williams v. State*, 911 S.W.2d 191, 195 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd). Compulsion exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure. *See* TEX. PEN.CODE ANN. § 8.05(c) (Vernon 2003); *Shaw v. State*, 874 S.W.2d 115, 119 (Tex.App.-Austin 1994, pet. ref'd). In order to support submission of an affirmative defense instruction of duress based upon compulsion, there must be some evidence of a specific, objective threat of death or serious bodily harm. *See Cameron v. State*, 925 S.W.2d 246, 250 (Tex.App.-El Paso 1995, no pet.).

 When the defendant has asserted an affirmative defense, the reviewing court considers all the evidence and determines whether the judgment rendered is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Clewis v. State*, 922 S.W.2d 126, 132 (Tex.Crim.App.1996) (citing *Meraz v. State*, 785 S.W.2d 146, 154 (Tex.Crim.App.1990)); *Maestas v. State*, 963 S.W.2d 151, 156 (Tex.App.-Corpus Christi 1998), *aff'd on other grounds*, 987 S.W.2d 59 (Tex.Crim.App.1999). In making this determination, we must accord due deference to the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence. *Johnson*, 23 S.W.3d at 9.

**B. Application of Law to Facts**

In his seventh issue appellant argues that a rational trier of fact could not have found against him. He claims that based upon his defenses and the facts, he could have been found guilty of no more than manslaughter. Appellant argues that he acted under the immediate influence of sudden passion arising from an adequate cause. His explanation of this claim is that he feared for his life because of threats by Joe. In addition to the "sudden passion" defense flowing from the influence of Joe, appellant claims the same facts support a defense of duress.

As to the proposition that his claim of "sudden passion" could support the finding of manslaughter, we find no merit. Effective September 1, 1994, the revised statutes no longer allow voluntary manslaughter based upon sudden passion to be submitted in the guilt phase of a trial. Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3613–14; see Wesbrook v. State, 29 S.W.3d 103, 113 (Tex.Crim.App.2000). Finally, regardless of whether this defense is applicable, it does not appear that appellant raised sufficient facts to support the submission of the issue of "sudden passion."

The court instructed the jury on the lesser included offense of manslaughter, and that it was a defense to prosecution if the appellant acted under duress. If the jury had a reasonable doubt regarding whether appellant intentionally and knowingly caused the victims' deaths, the jury could have acquitted appellant or found him guilty of manslaughter rather than murder.

Although appellant argues that his participation was under duress, Joe and Galloway both testified appellant acted voluntarily and was one of the primary actors. Appellant testified he was afraid of Joe, and that Joe threatened him with a gun. Joe and Galloway testified appellant was a willing participant in both the robbery and murders, and that he stole from the Lees, taking the stolen property back to his home. The stolen property was recovered from appellant's trash by the police.

The testimony of Joe and Galloway was clearly adverse to appellant. However, the jury was faced with conflicting testimony, and it was in a position to evaluate the credibility and demeanor of the witnesses when the testimony was delivered. Johnson, 23 S.W.3d at 8. The jury was free to believe Galloway's and Joe's version of the facts rather than appellant's. See Cain, 958 S.W.2d at 410. Simply because appellant has presented a different version of the facts does not render the State's evidence insufficient. As discussed in the previous portion of this opinion dealing with the factual sufficiency of the State's evidence, the evidence was sufficient for the jury to reject appellant's affirmative defense of duress and to find the intentional action which negates a finding of reckless action as in manslaughter. The jury's finding against appellant's claim of duress is not against the great weight and preponderance of the evidence, and the evidence upon which the jury's finding of his guilt is based is not so weak as to be clearly wrong or manifestly unjust. Johnson, 23 S.W.3d at 10–11. We resolve appellant's seventh issue against him.

## CAPITAL MURDER OF MRS. LEE

In his eighth issue appellant argues that a rational trier of fact could not have found him guilty of murder of Mrs. Lee as charged in the indictment. As to this issue, in substance, appellant reasserts his arguments regarding the legal and factual sufficiency of the evidence and his claim of duress. These arguments have been considered regarding appellant's issues two through seven and decided adversely to

appellant. We resolve appellant's eighth issue against him.

## IMPOSITION OF SENTENCE FOR PROBATION REVOCATION

After appellant was convicted of capital murder, the State moved to revoke appellant's probated sentence for robbery in a previous case. After a hearing, the trial court revoked appellant's probated sentence of five years' community supervision, and sentenced him to ten years' imprisonment and a fine of $750. Appellant complains the trial court illegally ordered his sentence for robbery to run consecutively to his sentence for murder and that there is no valid cumulation order in the record. Further, appellant complains that the trial court mistakenly referred to his murder case as cause No. F01–21548, which was the cause number of the case against one of the other defendants regarding the same occurrence.

### A. Applicable law

■■■ When a defendant is convicted in two or more cases, the trial court has discretion as to whether the judgment and sentence imposed in the second conviction begins to run when the judgment and sentence imposed in the preceding conviction has ceased to operate, or runs concurrently with the judgment and sentence imposed in the preceding conviction. TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (Vernon Supp.2003). Essentially, appellant argues that his sentence and conviction for robbery preceded his conviction for capital murder, and thus the robbery conviction cannot be a subsequent conviction for the purposes of section 42.08. However, in *Pettigrew v. State*, 48 S.W.3d 769, 771 (Tex.Crim.App.2001), the court held that a "conviction" is either the time when a sentence is suspended or the time a sentence is imposed. If community supervision is revoked and a sentence is imposed after

the defendant's conviction and sentencing for a new offense, then the court has the discretion to treat the revocation as a subsequent conviction for the purpose of stacking sentences. *Id.*

■■■ The decision to impose concurrent or cumulative sentences is within the discretion of the court. *See Stokes v. State*, 688 S.W.2d 539, 540 (Tex.Crim.App. 1985). The recommended elements of a cumulation order are: 1) the cause number of the prior conviction; 2) the correct name of the court where the prior conviction was taken; 3) the date of the prior conviction; 4) the term of years of the prior conviction; and 5) the nature of the prior conviction. *Id.* However, the inclusion of all five elements is not mandatory. *Id.* Cumulation orders rendered by the same court that rendered the previous conviction are valid even if they recite only the cause number of the previous conviction. *See Ex parte Davis*, 506 S.W.2d 882, 884 (Tex.Crim.App.1974).

### B. Application of Law to Facts

■■■ Appellant first complains that the court orally ordered that his sentence in the robbery conviction be served cumulatively with the sentence in cause no. F01–21548. Appellant was not the defendant in cause no. F01–21548. The record reflects that initially, the court did announce the wrong cause number for appellant's murder conviction, but then the misstatement was corrected. After correcting the error, the court ordered that once appellant had completed his sentence in cause no. F01–21556 (the correct cause number), he would then serve his sentence in cause no. F00–29421 (the cause number of the robbery case).

The decision regarding whether a sentence will run concurrently or consecutively is within the discretion of the trial court. TEX.CODE CRIM. PROC. ANN. art. 42.08;

*Stokes,* 688 S.W.2d at 540. Appellant was convicted of capital murder on December 4, 2001, and he was sentenced the same day to life in prison. On January 4, 2002, appellant's probation in a robbery conviction was revoked and he was sentenced to ten years in prison, to be served consecutively to his sentence for murder. The decision to treat the robbery conviction as a subsequent conviction to the murder conviction for the purposes of cumulating the sentences was within the discretion of the trial court. *Pettigrew,* 48 S.W.3d at 773. The trial court rendered both the sentence for robbery and the sentence for murder, so its cumulation order, which correctly identified the cause number of the robbery case and the cause number of the murder case, was sufficient. *See Stokes,* 688 S.W.2d at 540. We conclude the trial court did not abuse its discretion in cumulating the sentence for robbery and the sentence for murder, and that the court's cumulation order was sufficient. We resolve appellant's sole issue on his sentencing against him.

Having resolved all of appellant's issues on appeal adversely to him, we affirm the trial court's judgments.