Affirmed and Memorandum Opinion filed June 9, 2005









Affirmed
and Memorandum Opinion filed June 9, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-01171-CR

____________

 

BRANDON RAY DUPUIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause No. 924,381

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Brandon Ray Dupuis, appeals his
conviction for the capital murder of Prisileano Rodriguez, for which the jury
sentenced him to life in prison.  In
thirteen points of error, appellant claims that the evidence was legally and
factually insufficient to support his conviction and that the trial court erred
in admitting appellant’s videotaped statement. 
Because all dispositive issues are clearly settled in law, we issue this
memorandum opinion.  Tex. R. App. P. 47.1.  We affirm.

 








Background

Early in the morning on May 19, 2002,
Alfredo Garcia (“Freddy”), Kelly Holloway Mora (“Kelly”), Arcadio Mora
(“Arcadio”), and Prisileano Rodriguez (“P.J.”) were in Arcadio’s truck, taking
P.J. home.  Freddy drove with P.J. in the
passenger seat, and Kelly and Arcadio sat in the back, behind the driver’s
seat.  As the group approached
Rodriguez’s apartment complex, they noticed a car parked by a nearby
dumpster.  They drove past the car,
u-turned, and returned in the direction of P.J.’s home.  

According to Freddy and Arcadio, as they
drove slowly back up the street toward P.J.’s apartment complex, a white male
carrying a gun walked in front of the truck. 
Freddy stopped.  Two Hispanic men
pulled P.J. out of the passenger door of the truck.  They demanded money from him and Arcadio, who
remained in the back seat of the truck. 
Meanwhile, the white male who had walked in front of the truck knocked
on the driver side window with a gun, screaming at Freddy to get out of the
truck.  Another Hispanic man, wearing a
bandana over his face, approached and demanded Freddy’s wallet; when he found
it empty, he threw it back at Freddy. 
Freddy was then turned back around toward the truck, kicked, and ordered
to get back in the truck.  When he did,
he was struck across the face and told to drive away before anyone got
hurt.  Immediately thereafter, he heard a
single gunshot, so he put the truck in gear, and began to drive away.  In the truck’s rearview mirror, Freddy saw
P.J. fall to the ground.  He and his
friends later called 9-1-1 and returned to the scene, but not before P.J. died
at the scene from multiple gunshot wounds. 
Throughout the robbery, Kelly remained seated on the floor of the
truck’s backseat.  The group did not know
their attackers and were unable to give police information on the shooter and
the other robbers aside from their physical descriptions.








After a police investigation lead
detectives to appellant and three other individuals, appellant was arrested and
charged with the capital murder of Prisileano Rodriguez.  Appellant pled not guilty.  Following a two-day jury trial, he was found
guilty of capital murder and sentenced to life in prison. 

Legal and Factual Sufficiency

In twelve points of error, appellant
contends that the evidence is legally and factually insufficient to support his
conviction for capital murder.  We find
that the evidence is both legally and factually sufficient to support
appellant’s conviction.  

We utilize the normal standards in
conducting our sufficiency review.  Jackson
v. Virginia, 443 U.S. 307 (1979); King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000) (legal sufficiency standards); Zuniga v. State,
144 S.W.3d 477, 484 (Tex. Crim. App. 2004) (factual sufficiency
standards).  Since appellant’s arguments
are generally the same under the two standards, we will discuss them
together.  

The State’s theory of the case was that
appellant was guilty of capital murder in the death of Prisileano
Rodriguez.  The charge authorized the
jury to convict appellant under three theories of capital murder:  (1) as a principal; (2) as a party under
section 7.02(a)(2) of the Texas Penal Code; or (3) as a conspirator under the
law of parties as contained in Penal Code section 7.02(b).  Tex.
Pen. Code Ann. § 7.02(a)(2), (b) (Vernon 2003).  The jury in this case returned a general
verdict; in that event, when the evidence is sufficient to support a finding of
guilt under any of the allegations submitted, the verdict will be upheld.  See Alvarado v. State, 912 S.W.2d 199, 225
(Tex. Crim. App. 1995).  

Conspiracy








It is well-settled in Texas that a person
can be found guilty of capital murder as a conspiring party under section
7.02(b).  E.g., Johnson v.
State, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992); Cienfuegos v. State,
113 S.W.3d 481, 489‑90 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d);
see also Montoya v. State, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989)
("the theory of criminal responsibility set forth in Section 7.02(b) has
often been applied in capital murder cases").[1]  Thus, if the evidence demonstrated that
appellant conspired with others to commit robbery and that, during the robbery,
one of the co-conspirators committed capital murder, appellant could be held
criminally responsible for the capital murder under section 7.02(b) if the
murder was in furtherance of the conspiracy’s unlawful purpose and should have
been anticipated. 

While mere presence at the scene of an
offense is insufficient to sustain a conviction as a party to the offense, Valdez
v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981), the evidence is sufficient
to sustain a conviction under the law of parties if the defendant had been
present at the scene of the offense and encouraged its commission by either
words or agreement.  Ransom v. State,
920 S.W.2d 288, 302 (Tex. Crim. App. 1994). 
We therefore look to events that occurred before, during, and after the
commission of the offense for actions by the appellant indicating an
understanding and common design to do the prohibited act.  Id. 

Appellant testified that he, Rogelio a/k/a
Roger Mora (“Roger”), Francisco Perez (“Paco”), and Leonardo Tellez (“Leo”)
were out driving around in Leo’s car on the night of May 18th into the early
morning of the 19th.  The foursome had
been drinking and taking Xanax at the Coco Loco Club, but left after the club
ejected Roger for “grabbing on a girl.” 
The ejection enraged Roger, who talked about “shooting the club up and
beating on the bouncer” in retaliation. 
Once the group got in the car and left the club, Roger began telling
them that he wanted to rob, or “jack” someone. 
Roger fired his Glock 40, one of the two guns he had with him that
night, out of the moving car window several times and continued to talk about
his desire to commit a robbery.  The
other three attempted to calm Roger down; however, after Roger’s continued
insistence, Leo exited the freeway and drove through a neighborhood.  Appellant, who had seen Roger shoot another
person before, testified that he was afraid of Roger and of what Roger would do
to him should he not go along with his plan.








Appellant testified that he fell asleep,
but woke up when the car stopped.  He saw
Roger outside of the car, near the Ford Ranger. 
Appellant testified that, out of fear for what Roger would do to him, he
took the Glock, which he believed to be unloaded, got out of the car, and
approached the driver’s side of the truck. 
Appellant denied stopping the car, demanding money from Freddy, or
pointing a weapon at any of the four individuals in the truck.  Appellant claimed that Paco was the main
actor in the robbery of Freddy but that he did tell Freddy to “get out of here
so you don’t get hurt.”  Appellant
testified that, although he heard multiple shots, he did not see Roger shoot
P.J.

Freddy and Arcadio, however, testified
that their truck was stopped by a white male with a gun in his hand.  Freddy also testified that, although two
individuals robbed him on his side of the truck,[2]
the “white guy” with the gun, whom he identified as appellant, appeared to be
“in charge.”  Of the four actors,
appellant is the only Caucasian individual; Roger, Leo, and Paco are all
Hispanic.  Freddy further testified that
the individual with the gun wore white “hospital” gloves and that he heard
another voice giving orders from the other side of the truck.  Appellant testified that Roger later told him
that he shot P.J. to ensure that there would be no witnesses who had seen the
license plate number of Leo’s car.

In sum, proof existed that appellant
conspired with Roger, Paco, and Leo to rob Freddy, Kelly, Arcadio, and
P.J.  There was also proof that, during
the robbery, Roger shot P.J. in furtherance of the conspiracy’s unlawful
purpose; that this caused P.J.’s death; and that P.J.’s death should have been
anticipated.   We therefore conclude
that, since a rational trier of fact could have found the elements of the
offense beyond a reasonable doubt, the evidence is legally sufficient to
support appellant’s conviction as a co-conspirator.  See King, 29 S.W.3d at 562. 








We also conclude that a neutral review of
the evidence does not demonstrate that the proof of guilt is so obviously weak
as to undermine confidence in the jury’s determination.  See Zuniga, 144 S.W.3d at 483-84.  Neither is the proof of guilt greatly
outweighed by any contrary proof.  As
sole trier of fact, the jury was free to believe the State’s evidence and disregard
appellant’s testimony; we will not second-guess the jury’s determination as to
the credibility of the witnesses’ testimony. 
See Dorsey v. State, 24 S.W.3d 921, 924 (Tex. Crim. App. 2000). 

Because the jury in this case returned a
general verdict and we find that the evidence is sufficient to support a
finding of guilt under the conspiracy allegation, we need not discuss
appellant’s challenges to the sufficiency of the evidence as a principal or a
party.  See Alvarado v. State, 912
S.W.2d at 225.  Appellant’s first ten
issues are overruled.

Duress








In his eleventh and twelfth issues,
appellant argues that the evidence is legally and factually insufficient for
the jury to have rejected his affirmative defense of duress.  Duress is an affirmative defense to
prosecution when a defendant establishes by a preponderance of the evidence
that he “engaged in the proscribed conduct because he was compelled to do so by
threat of imminent death or serious bodily injury to himself or another.” Tex. Pen. Code Ann. § 8.05(a) (Vernon
2003); see also Edwards v. State, 106 S.W.3d 833, 843 (Tex. App.—Dallas
2003, pet. ref’d).  Compulsion exists
only if the force or threat of force would render a person of reasonable
firmness incapable of resisting the pressure. 
Tex. Pen. Code Ann. §
8.05(c) (Vernon 2003); Edwards, 106 S.W.3d at 843.  There are two components of immediacy in an
imminent threat: (1) the person making the threat must intend and be prepared
to carry out the threat immediately; and (2) carrying out the threat must be predicated
upon the threatened person’s failure to commit the charged offense
immediately.  Anguish v. State,
991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).  When the defendant asserts an affirmative defense, the
reviewing court considers all the evidence and determines whether the judgment
rendered is so against the great weight and preponderance of the evidence as to
be manifestly unjust.  Edwards, 106 S.W.3d at 843.  In making this determination, we must accord due deference to
the fact finder’s determinations, particularly those determinations concerning
the weight and credibility of the evidence. 
Id. 

We conclude that the evidence is legally
and factually sufficient for the jury to have rejected appellant’s affirmative
defense of duress.  If the facts occurred
as appellant claims they did, his waking up and voluntarily getting out of the
car to approach the truck, thereby engaging in the conspiracy, meets neither
the compulsion nor the immediacy requirement of Penal Code section 8.05.  See Tex.
Pen. Code Ann. § 8.05 (Vernon 2003).

Appellant’s eleventh and twelfth points of
error are overruled.

Admission of the Videotaped Statement

In his thirteenth and final point of
error, appellant claims that the trial court erred in admitting his videotaped
statement in violation of his Fifth Amendment right against self-incrimination
and his Fourteenth Amendment right to due process.  U.S.
Const. amends. V, XIV. 
Specifically, he claims that his statement was involuntary based on his
allegation that he was improperly induced into making the statement by a
promise of a reduced charge.  We
disagree.

We review a trial court’s ruling on a
motion to suppress for an abuse of discretion. Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App. 1996). 
At a suppression hearing, the trial judge is the sole trier of facts,
the credibility of the witnesses, and the weight to be given to their
testimony.  Alvarado v. State, 853
S.W.2d 17, 23 (Tex. Crim. App. 1993). 
Accordingly, we must show almost total deference to a trial court’s
resolution of factual questions, especially when those findings are based upon
the credibility and demeanor of the witnesses. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The appellate court does not engage in its
own factual review, but decides only whether the trial court’s fact findings
are supported by the record.  Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  








After police arrested appellant and took
him into custody, Detective Richard Martinez of the Houston Police Department
conducted a videotaped interview with appellant.  Before the trial began, appellant filed a
motion to suppress the admission of the videotape.  During the trial, a hearing was held outside
the presence of the jury, after which the trial court denied appellant’s
motion.  

At the hearing, appellant testified that
Officer Martinez told his family that if appellant gave a statement, the
capital murder charge would be reduced and appellant would receive a bond the
same day.  Appellant also testified that
Martinez told him he was not responsible for Roger Mora’s actions and that,
should he give a statement, the District Attorney would drop the charge from
capital murder to aggravated robbery. 
Martinez testified, by contrast, that he made no promises to appellant
or statements about appellant’s bond, but promised to confirm that appellant
had been cooperative.

In its written findings of fact and
conclusions of law, the trial court found that appellant “was not promised
anything in return for making his statement nor was he coerced or threatened in
any way.”  The trial court concluded that
appellant’s statement “was given freely, voluntarily, and in accordance with
article 38.22 of the Code of Criminal Procedure.” 








We also note that Dunn v. State,
721 S.W.2d 325 (Tex. Crim. App. 1986), cited by appellant in support of his
position, is not controlling because that case dealt with a violation of the
warnings required by the Code of Criminal Procedure.  See Tex.
Code Crim. Proc. Ann. art. 38.22 (Vernon 2003).  Appellant does not make a complaint that
Martinez failed to properly administer warnings pursuant section 38.22.  Furthermore, the reasoning in Dunn was
later questioned in Creager v. State, in which the Court of Criminal
Appeals stated that the totality of circumstances surrounding the acquisition
of a statement, rather than simply whether a statement was induced by an
improper promise, should be examined to determine whether the statement was
voluntarily given.  952 S.W.2d 852, 856
(Tex. Crim. App. 1997).  Because we must show almost total deference to
a trial court’s resolution of factual questions, especially when those findings
are based on the credibility and demeanor of the witnesses, we conclude that
the trial court’s findings of fact are supported by the record and that the
trial court therefore did not abuse its discretion in admitting appellant’s
videotaped statement.  We also note that
nothing in the statement differs dramatically from appellant’s own testimony at
trial; contrary to what appellant claims, any harm he suffered by having the
jury view the videotape is likely minimal, at best.  Appellant’s thirteenth and final point of
error is overruled.

We affirm the judgment of the trial court.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed June 9, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Frost.

Do
Not Publish — Tex. R. App. P.
47.2(b).

 

 











[1]  The death penalty cannot be imposed
on someone who was only a party to murder. 
Johnson, 853 S.W.2d at 535 (citing Cuevas v. State, 742
S.W.2d 331, 343 (Tex. Crim. App. 1987)).





[2]  Freddy
identified Paco as the bandana-wearing Hispanic male on the driver’s side of
the truck.