**AFFIRMED; Opinion Filed July 12, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00916-CR

## PAULA JOYCE WARREN, Appellant
## V.
## THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7
Dallas County, Texas
Trial Court Cause No. F11-31042-Y

## MEMORANDUM OPINION
Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Moseley

A jury convicted Paula Joyce Warren of burglary of a habitation. The trial court assessed punishment at five years' imprisonment. Warren appeals and argues in four issues that the evidence is insufficient to convict her as a primary actor, as a party, or as a conspirator; and that she suffered egregious harm from an error in the charge.

The background of the case and the evidence adduced at trial are well known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

## BACKGROUND

The complainant, Paul Audet, returned early from a camping trip to find his home in Grand Prairie ransacked. Several items had been stolen and gasoline had been poured around the interior of the house. Some papers and a towel were found burned inside the house, along with a near-empty gasoline can.

An anonymous caller told police that a white Pontiac containing stolen items was parked at a certain address. Officer Randall Rogers went to the address and found the car parked in front of Warren's residence. In the back seat of the car were items stolen from Audet's house. Warren admitted she owned the car. She was nervous, but cooperated. She initially said the items in the car belonged to her son, Christopher Boatmun, but then said they belonged to his friend. Warren told Rogers she did not know where Boatmun was. She said Boatmun called her and asked her to pick him up at Audet's house. After she picked him up and was driving him home, he jumped out of the car and left.

Audet had motion-activated video cameras around his house. The recordings show Boatmun pulling down window screens, removing several items from the home, and talking on a cell phone. At 7:38 a.m., Boatmun is shown carrying a gas can into the house. Around 8:00 a.m., Warren's car is shown driving past the house a couple of times before pulling into a driveway. While Warren sat in the car, Boatmun loaded several items into the back seat. Warren got out of her car and walked to the back of the house. At 8:05:56 a.m., Warren entered the home by climbing through a broken sliding glass door. She exited the house with Boatmun about thirty seconds later; She returned to the car followed by Boatmun; he was carrying a large bag, which he put in the back seat. Warren then drove away with Boatmun and the stolen items in the car. About three hours after leaving the house, Warren called the Audet house and left a message saying someone had called her from that number and that they could call her back.

–2–

Officer Peterson was the first person to enter the house after the burglary. He arrived around 3:00 p.m. He testified the inside of the house had been doused with gasoline and the odor was so powerful he had to open all the doors to get ventilation. Peterson found pieces of burnt paper and an almost empty gas can inside the house.

Arson investigator Tommy Owens testified that gasoline had been poured and splashed in a pattern consistent with a trail from the ignition point to an exit point for the arsonist. In his opinion, from the amount of gasoline throughout the house, the arsonist intended to burn the house to the ground.

### SUFFICIENCY OF THE EVIDENCE

We review the evidence under the legal sufficiency standard of review. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). In a legal sufficiency review, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames*, 353 S.W.3d at 860. This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Id.* We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

As applicable here, a person commits burglary if, without effective consent of the owner, she enters a habitation and commits or attempts to commit a felony, theft, or assault. TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011). A person commits arson if the person starts a fire, regardless of whether the fire continues after ignition, with intent to destroy or damage any habitation knowing it is located within the limits of an incorporated city or town. TEX. PENAL

–3–

CODE ANN. § 28.02(a)(2)(A).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. *See* TEX. PENAL CODE ANN. § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See id.* § 7.02(a)(2). If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, even if they had no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and should have been anticipated as a result of carrying out the conspiracy. *See id.* § 7.02(b).

In determining whether the accused is guilty as a party, we may consider events occurring before, during, and after commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *See King v.. State*, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000); *Edwards v. State*, 106 S.W.3d 833, 842 (Tex. App.—Dallas 2003, pet. ref'd). Although mere presence at the scene of the offense is not enough, presence is a circumstance tending to prove guilt, which, when combined with other facts, may suffice to show the accused was a participant. *See Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987); *Edwards*, 106 S.W.3d at 842.

The jury charge permitted the jury to convict Warren as a principal, as a party under section 7.02(a)(2), or as a conspirator under section 7.02(b). Because the trial court's charge authorized the jury to convict on alternative theories, the verdict of guilt will be upheld if the evidence was sufficient on any one of the theories. *Sorto v. State*, 173 S.W.3d 469, 472 (Tex.

Crim. App. 2005). We discuss the sufficiency of the evidence to support Warren's conviction as a party, which is the subject of her second issue.

There is evidence in the record that Warren did not have Audet's consent to enter his house, that she entered Audet's house through a broken sliding door, that gasoline was poured inside the house, and a fire was started inside the house. Warren allowed Boatmun to load items taken from the house into her car and drove away from the house with Boatmun and the property. There is evidence Warren communicated with Boatmun before she arrived at the house and she called the house after she left. The video recording indicates she drove by the house several times before pulling into the driveway.

Considering all the evidence (including that summarized above) in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that Warren, with intent to assist the commission of burglary of a habitation, aided or attempted to aid Boatmun to commit the offense, and was thus guilty as a party. *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. We overrule Warren's second issue. Because the evidence is sufficient to support her culpability as a party, we do not address Warren's first and third issues. *See* TEX. R. APP. P. 47.1; *Sorto*, 173 S.W.3d at 472.

### CHARGE ERROR

In her fourth issue, Warren contends the jury charge erroneously instructed the jury on burglary under penal code section 30.02(a)(1) rather than burglary under section 30.02(a)(3) as alleged in the indictment. Warren did not object to the jury charge on this basis.

The indictment charged that Warren entered a habitation without the effective consent of Audet and committed a felony, namely, arson. This is burglary under penal code section 30.02(a)(3). TEX. PENAL CODE ANN. § 30.02(a)(3). The jury charge, however, instructed the

jury under penal code section 30.02(a)(1), entering a habitation without effective consent of the owner "*with intent to commit a felony, theft, or an assault*." TEX. PENAL CODE ANN. § 30.02(a)(1) (emphasis added). The State concedes this was error, but argues the error did not result in egregious harm to Warren.

Our first duty in analyzing a jury charge issue is determining whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Because the State concedes the error, we turn to whether the error was harmful.

Jury charge error is not forfeited by a defendant's failure to object at trial. *Cosio v. State*, 353 S.W.3d 766, 776 (Tex. Crim. App. 2011) (discussing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). The failure to object controls the type of harm analysis that will be applied. *Id.* Because Warren did not object at trial, we will reverse only if the error resulted in egregious harm. *Ngo*, 175 S.W.3d at 738; *Almanza*, 686 S.W.2d at 171.

Egregious harm must be based on a finding of actual rather than theoretical harm. *Cosio*, 353 S.W.3d at 777. To establish actual harm, the charge error must have affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory." *Id.* (quoting *Almanza*, 686 S.W.2d at 171). When assessing harm based on the particular facts of the case, we consider: (1) the charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *Id.*

Entering a habitation without effective consent of the owner is common to both burglary under subsection (a)(1) and (a)(3) of section 30.02. *See* TEX. PENAL CODE ANN. § 30.02(a)(1), (3). The subsections differ in that (a)(1) requires entry *with intent to commit* a felony, theft, or assault, while (a)(3) requires entry *and the commission or attempt to commit* a felony, theft, or

–6–

assault. The jury charge instructed the jury on the definitions of habitation, effective consent, owner, entry, and intentional or knowing conduct. The charge also instructed the jury on the law of parties and conspiracy. In addition, the jury charge contains instruction on the lesser included offense of criminal trespass.

The jury charge gave an instruction under section 30.02(a)(1) in the abstract portion and the first part of the application portion. The application portion also instructed the jury that if they found from the evidence beyond a reasonable doubt:

> Said defendant, PAULA JOYCE WARREN, entered into a conspiracy with CHRISTOPHER BOATMUN to commit the felony offense of burglary of a habitation with the intent to commit a felony, and that in the attempt to carry out this agreement, if any, PAULA WARREN did then and there unlawfully, intentionally or knowingly enter a habitation without the effective consent of PAUL AUDET, the owner thereof, and *did then and there commit a felony other than theft, namely, arson*, then you will find the defendant guilty.

(emphasis added).

During deliberations, the jury sent out a note with three questions:

> (1) To be guilty of the burglary, with intent to commit a felony, namely arson, would she have to have:
>
> (a) Aided in the actual arson or committed the arson?
>
> (b) Entered the property with the intention of aiding the act of arson?
>
> (2) Is it a reasonable assumption that an act of burglary could lead to an act of arson?
>
> (3) If she assisted in the burglary, is she guilty of assisting in the arson?

The trial court responded by instructing the jury:

> With regard to question two, this is an issue that is within the exclusive province of the jury and it is for the jury to resolve this question.
>
> With regard to questions one and three, these are legal questions and your legal instructions with regard to the resolution of these questions are contained within the entirety of the instructions. Please closely read the

entirety of the instructions again.

In response to a jury note asking for definitions of arson and intent to commit arson, the trial court referred the jury to the definition of intentional conduct in the original charge and gave them a definition of arson.

Considering the entire charge and the trial court's responses to the jury questions, this factor weighs only slightly in favor of finding egregious harm.

The state of the evidence does not indicate Warren was egregiously harmed by the error in the jury charge. The defense developed its theory that there was no evidence that Warren started the fire. The State never argued that even if Warren did not start the fire, she entered the house with the intent to commit arson. The video shows Warren entering a house that had been doused with gasoline and quickly leaving with Boatmun. There was evidence a fire was started inside the house, although for unknown reasons the fire did not spread. The evidence also showed Warren allowed Boatmun to place several items from the house in her car, entered the house herself through one of several broken windows, and then quickly left with Boatmun and the stolen property. This factor does not weigh in favor of finding egregious harm.

Regarding the arguments of counsel, both the prosecutor and defendant's counsel referred to the incorrect jury charge. However, both developed their theories of the case. The central theme of the State's argument was that Warren was a party to the offense by aiding and abetting Boatmun in committing burglary and arson. The defense put forth its theory that Warren was merely present at the scene and did not commit arson. The defense argued it was a reasonable inference from the evidence that Warren went into the house to put the fire out after Boatmun started it. The State argued it was also reasonable to infer she entered the house to start the fire or slow it down with a towel to give them time to escape. This factor also does not weigh in favor of egregious harm.

–8–

Considering the entire record, we conclude the charge error did not affect the very basis of the case, deprive defendant of a valuable right, or vitally affect a defensive theory. Actual harm has not been shown and we cannot say that Warren was denied a fair and impartial trial. We overrule Warren's fourth issue.

We affirm the trial court's judgment.

/Jim Moseley/
JIM MOSELEY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
120916F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PAULA JOYCE WARREN, Appellant

No. 05-12-00916-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F11-31042-Y.
Opinion delivered by Justice Moseley.
Justices Bridges and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 12th day of July, 2013.

/Jim Moseley/
JIM MOSELEY
JUSTICE