NUMBERS 13-07-162-CR and 13-07-163-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CHRISTOBAL GARCIA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 On appeal from the 214th District Court 

of Nueces County, Texas

 
MEMORANDUM OPINION


Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Vela



 A jury convicted appellant, Christobal Garcia, of evading arrest or detention with a
vehicle (1) (Cause No. 13-07-162-CR) and deadly conduct (2) (Cause No. 13-07-163-CR), and
assessed punishment at seventeen months in a state-jail facility, plus a $3,000 fine, and
five years in prison plus a $5,000 fine, respectively. Garcia presents four issues on appeal. 
We affirm.

A. Factual Background


 On October 11, 2006, Corpus Christi police officer Lorenzo Lopez saw a Mazda turn
off of Holly Road onto Flynn Parkway. While following the Mazda, he heard "shots being
fired" and saw that Jacob Gonzalez, the Mazda's right front-seat passenger, was shooting
at a Chevy Tahoe. Lopez turned on his lights and siren in order to stop the Mazda. 
Garcia, the Mazda's driver, sped away. Lopez testified that during his pursuit of the
Mazda, "he [Garcia] slammed on his brakes in an attempt to get me to hit him. I swerved
to the left to try to avoid the impact, and then, he tried twice to come over and knock me
off the road . . . ." Lopez chased Garcia for about 7.7 miles until Garcia stopped in a cul-de-sac. There, the Mazda's occupants, Garcia, Clarence Hastings and Gonzalez, were
arrested.

 On cross-examination, Lopez testified that he did not see the back-seat passenger
fire any shots. Lopez did not see anyone in the Tahoe shoot at the Mazda.

 During their search of the Mazda, police found several magazines with ammunition
on the front floorboard. They also found a pistol, a sub-machine gun, and several high-capacity magazines inside the air-bag compartment. At the scene of the shooting, police
recovered seven nine millimeter luger casings, seven .45 auto casings, and one projectile. 
While examining the Tahoe involved in the shooting, they saw a "small graze" or "small
dent, indention" on the passenger's side front-quarter panel, a hole to the left side of the
rear license plate, and a bullet lodged in the driver's side, third-row captain's seat. Police
did not find any firearms, live ammunition, or spent casings in the Tahoe. 

 Clarence Hastings testified that on the night in question, he, Garcia, and Gonzalez
were buying gas. While buying gas, Hastings saw a Chevy Tahoe with two people inside
stop on the opposite side of the gas pumps where Garcia's Mazda was parked. A person
in the Tahoe pointed a gun at them, and then the Tahoe drove away. After buying gas,
Hastings and his companions rode around the town. At some point, they saw the Tahoe. 
When the prosecutor asked Hastings, "[H]ow'd the shooting start?", he replied, "They
started shooting first, sir. We just started hearing gunshots, and then, I was handed a gun--[.]" Hastings stated that Garcia gave him a black handgun. Hastings, who was sitting in
the Mazda's right rear seat, fired four or five shots up in the air. He did not point the gun
at the Tahoe. He said that while he fired in the air, Gonzalez, who was sitting in front of
him, "hanged out the window shooting" towards the Tahoe.

 Gabriel Tamez testified that on the night in question, he was riding in the Tahoe and
that his cousin, Adan Benavidez, was the driver. Tamez stated that after they left the gas
station, "We were at a stop sign, saw some guy get out of his car and lean over on top of
the hood, start shooting at us. So we take off, go around the park." He said that neither
he nor Adan had a firearm with them.

 Garcia, testified that while he, Gonzalez, and Hastings were buying gas, Hastings
told him that "some guys pulled up" and that they "wanted some S-H, you know." Garcia
saw that the driver, who had pulled up behind his Mazda, had a black revolver in his hand. 
Garcia testified that the driver pulled the gun on Hastings because Hastings was standing
behind Garcia's car. At that point, Garcia told Gonzalez, "'[T]hese guys got a gun . . . .'" 
Gonzalez grabbed a gun from the air-bag compartment of Garcia's car and gave it to
Garcia. After the vehicle drove away, Garcia and his companions left. Garcia testified that
Hastings, who was sitting in the back seat, took the gun from him. Soon thereafter,
Gonzalez "leaned out the car and started shooting some shots." Garcia testified that
Hastings had "commandeered my vehicle because he told me he wasn't gonna give me
my gun back till I got out the vehicle--till he got out the vehicle." Hastings told Garcia to
follow the vehicle, which he did. As Garcia drove behind the vehicle, Gonzalez fired some
shots. Garcia heard more shots coming from the back seat. When Hastings stopped
shooting, Gonzalez leaned out the car and started shooting again. Hastings told Garcia
that the police were behind them and that "I better not crash and I better not stop." So,
Garcia continued to drive. When counsel asked Garcia, "[Y]ou did run away from him [the
policeman] in the vehicle?", he replied:

 Yes, sir. I was scared because Mr. Clarence Hastings had a pistol in the
back seat, and he told--he was already irate 'cause they pulled out the
weapon on him. I didn't feel like they really put it out on me so much,
because--but I guess if he's in danger, I'm in danger, too, 'cause we're in the
same vehicle.


 Q. And that's the only reason that you ran from the police officer, was
because of Mr. Hastings?


 A. Yes, sir.


 Q. Okay.


 A. Well, it's either I get shot and crash, or I come and plead my case.


 Q. Okay.


 A. That's how I felt at the time.


 * * *


 I didn't feel like talking to the officers in the first place, 'cause they're
accusing me of doing something wrong, which I didn't. I don't believe I did. 
I don't know how anybody would feel if they was in my situation when
somebody's in the back seat has a weapon, telling you to do this, do that,
what are you supposed to do? I'm not gonna try to say that he held me
hostage or--I don't know how to explain it. . . .


 * * *


 [I]t was either die right there or go to jail, and I chose to go ahead and go to
jail over getting killed right there.


 On cross-examination, Garcia testified that the guns and the car he was driving
belonged to him. He stated that "Clarence [Hastings] commandeered my vehicle by having
the gun in the back seat and telling me ride or die and this and that." He denied handing
Gonzalez a gun.

B. Charge Error


 By issues one and three, Garcia argues the trial court "fundamentally erred" (3) by
failing to instruct the jury on the law of (1) accomplice-witness testimony, and (2) the
affirmative defense of duress. Garcia did not request these instructions or object to the
lack of these instructions in either charge.

Standard of Review


 In Druery v. State, the court of criminal appeals stated the standard for reviewing
charge error:

 In reviewing charge error, we must first determine whether error
exists. If we find error, we must then determine whether the error caused
sufficient harm to require reversal . . . . [T]he degree of harm necessary for
reversal depends upon whether the error was preserved. Error properly
preserved by an objection to the charge will require reversal as long as the
error is not harmless. We have interpreted this to mean that any harm,
regardless of degree, is sufficient to require reversal. But when the charging
error is not preserved, a greater degree of harm is required, and this
standard of harm is described as egregious harm. Errors that result in
egregious harm are those affecting the "'very basis of the case,'" those
depriving "the defendant of a 'valuable right,'" or those that "'vitally affect a
defensive theory.'"


225 S.W.3d 491, 504 (Tex. Crim. App. 2007) (footnotes omitted).

The Accomplice-Witness Rule


 Texas law requires that, before a conviction may rest upon an accomplice witness's
testimony, independent evidence tending to connect the accused with the crime must
corroborate the testimony. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005) (4); Druery,
225 S.W.3d at 498. An accomplice is one who participates in an offense, before, during,
or after its commission and acts with the required culpable mental state. Druery, 225
S.W.3d at 498. A person who is indicted for the same offense with which the defendant
is charged is an accomplice as a matter of law. Ex parte Zepeda, 819 S.W.2d 874, 876
(Tex. Crim. App. 1991); see Cocke v. State, 201 S.W.3d 744, 747-48 (Tex. Crim. App.
2005). "If a witness is an accomplice as a matter of law, the trial court is required to
provide an accomplice-witness instruction to the jury." Cocke, 201 S.W.3d at 748. Failure
to do so is error. Herron v. State, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002).

 Because Garcia and Hastings were indicted as co-defendants for both offenses,
Hastings is an accomplice as a matter of law. Zepeda, 819 S.W.2d at 876; Cocke, 201
S.W.3d at 748. Thus, the trial court erred by failing to instruct the jury to that effect. 
Herron, 86 S.W.3d at 631. 

Sufficiency of the Corroborating Evidence



 The accomplice-witness rule creates a statutorily imposed review and is not derived
from federal or state constitutional principles that define the legal and factual sufficiency
standards. Druery, 225 S.W.3d at 498. Rather, in conducting a sufficiency review under
the accomplice-witness rule, we must eliminate the accomplice testimony from
consideration and then examine the remaining portions of the record to see if there is any
evidence that tends to connect the accused with the commission of the offense. Solomon
v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). "'Tendency to connect' rather than
rational sufficiency is the standard: the corroborating evidence need not be sufficient by
itself to establish guilt." Id. In other words, there simply needs to be other evidence
tending to connect the accused to the offense. Id. Even apparently insignificant
incriminating circumstances may sometimes afford satisfactory evidence of corroboration. 
Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).

 In this case, the non-accomplice evidence showed the following: Officer Lopez saw
the Mazda's front-seat passenger shoot at the Tahoe. When Lopez turned on his
overhead lights and siren, Garcia sped away from the scene of the shooting. While Lopez
chased Garcia, Garcia ignored traffic signals, drove at a high rate of speed, slammed on
his brakes in an attempt to get Lopez to hit him, and tried to "knock" Lopez off the road. 
He chased Garcia approximately 7.7 miles before Garcia stopped in a cul-de-sac. Garcia
testified that he was driving the Mazda, that it belonged to him, and that the weapons
belonged to him.

 While a defendant's mere presence in the company of an accomplice before,
during, and after the commission of the offense is insufficient by itself to corroborate
accomplice testimony, evidence of such presence, coupled with other suspicious
circumstances, may tend to connect the defendant to the offense. Id. We conclude that
the non-accomplice witness evidence sufficiently corroborates the accomplice-witness
testimony and tends to connect Garcia to both offenses. Consequently, the evidence is
sufficient to comply with article 38.14. See Tex. Code. Crim. Proc. Ann. art. 38.14
(Vernon 2005); Fentis v. State, 582 S.W.2d 779, 780-81 (Tex. Crim. App. 1976) (providing
that evidence of flight evinces a consciousness of guilt).

Omission of the Accomplice-


Witness Instruction from the Charge



 When considering whether the court's failure to give an accomplice-witness
instruction was harmful, we examine the effect an accomplice-witness instruction has on
the trial. Herron, 86 S.W.3d at 631. A harmless-error analysis for the omission of an
accomplice-witness instruction should take into account (1) the existence and strength of
any non-accomplice evidence and (2) the applicable standard of harm. Id. at 632. In
determining the strength of a particular item of non-accomplice evidence, we examine (1)
its reliability or believability and (2) the strength of its tendency to connect the accused to
the crime. Id. The reliability inquiry may be satisfied if (1) there is non-accomplice
evidence, and (2) there is no rational and articulable basis for disregarding the non-accomplice evidence or finding that it fails to connect the accused to the offense. Id. at
633.

 Because Garcia did not object to the trial court's failure to provide the accomplice-witness instruction, he must show "egregious" harm. Druery, 225 S.W.3d at 504; Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "Under the egregious
harm standard, the omission of an accomplice witness instruction is generally harmless
unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render
the State's overall case for conviction clearly and significantly less persuasive.'" Herron,
86 S.W.3d at 632 (quoting Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App.
1991)).

 As previously addressed, sufficient non-accomplice evidence tends to connect
Garcia to both offenses. There is no rational and articulable basis for disregarding the non-accomplice evidence, and the record does not support a finding that the non-accomplice
evidence failed to connect Garcia to both offenses. The corroborating evidence is not "so
unconvincing in fact as to render the State's overall case for conviction clearly and
significantly less persuasive." Therefore, because the non-accomplice evidence tends to
connect Garcia to both offenses, and because there is evidence to corroborate the
accomplice-witness testimony, we cannot say either the corroborating evidence is
insufficient, nor can we conclude Garcia suffered egregious harm as a result of the trial
court's failure to instruct the jury.

The Affirmative Defense of Duress


 An accused has the right to an instruction on any defensive issue raised by the
evidence whether the evidence is weak or strong, unimpeached or contradicted, and
regardless of what the trial court may or may not think about the credibility of the evidence. 
Granger v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). Duress is an affirmative
defense requiring the accused to prove by a preponderance of the evidence that he
committed the offense "because he was compelled to do so by threat of imminent death
or serious bodily injury to himself or another." Tex. Penal Code Ann. §§ 2.04(d), 8.05(a)
(Vernon 2003); Edwards v. State, 106 S.W.3d 833, 843 (Tex. App.-Dallas 2003, pet. ref'd). 
There are two components of immediacy in an imminent threat: (1) the person making the
threat must intend and be prepared to carry out the threat immediately; and (2) carrying out
the threat must be predicated upon the threatened person's failure to commit the charged
offense immediately. Anguish v. State, 991 S.W.2d 883, 886 (Tex. App.-Houston [1st
Dist.] 1999, pet. ref'd). This affirmative defense is not available to an accused if he or she
intentionally, knowingly, or recklessly placed himself or herself in a situation in which it was
probable that he would be subject to compulsion. Tex. Penal Code Ann. § 8.05(d) (Vernon
2003). To establish compulsion, a defendant must prove that "the force or threat of force
rendered a person of reasonable firmness incapable of resisting the pressure." Tex. Penal
Code Ann. § 8.05(c); Edwards, 106 S.W.3d at 843. 

 In this case, the evidence with respect to evading arrest showed that Hastings was
in the back seat with a loaded weapon. He ordered Garcia to drive or die. Thus, Hastings
intended or was prepared to carry out the threat immediately. Furthermore, the threatened
harm was conditioned on Garcia's evasion of the police. Therefore, the evidence raised
duress as a defense to the offense of evading arrest, because Garcia was compelled to
evade the police by threat of imminent death or serious bodily injury to himself. Regarding
the offense of deadly conduct, the evidence is weak that Garcia participated in this offense
because Hastings compelled him to do so. Nevertheless, we will analyze the case to
determine whether the trial court erred in failing to give the instruction on duress for both
offenses. 

 Because Garcia did not object to the trial court's failure to so instruct the jury, he
"will obtain a reversal only if the error was so egregious and created such harm that he or
she 'has not had a fair and impartial trial-in short 'egregious harm.'" Druery, 225 S.W.3d
at 505 (quoting Almanza, 686 S.W.2d at 171). We measure the actual degree of harm in
light of the entire jury charge, the state of the evidence, including the contested issues and
weight of probative evidence, argument of counsel, and any other relevant information
revealed by the trial record. Id.



State of the Evidence


 The jury heard, and we have already stated, Garcia's testimony relating to Hastings
placing him under fear of death if he did not evade the police following the shooting.

Argument of Counsel



 In his closing argument at the guilt/innocence stage, counsel argued to the jury:


 Chris [Garcia] had a chance to plead guilty to this. He told you he had a
chance to plead guilty. He had a chance to get probation on this, but he, in
good conscience, could not plead guilty to this, regardless of the situation,
regardless of the circumstances, regardless of the fact that he had guns in
the car. He was not the instigator for the shooting. He did not want to shoot
at those people, and he told you that the reason that he did that was
because of Mr. Hastings. Mr. Hastings was in the back seat with a pistol and
told him that he had to do this. The key thing that--both of these situations
is in the deadly conduct. He has to be somebody who is a willing participant,
who has to do something to aid, encourage and direct, encourage and direct
a person, the people who actually do the shooting, and Chris came up here
and told you, "I didn't want to shoot at them. The only reason I did what I did
was because of Mr. Hastings, and the only reason I fled from the police
officer"--and that's something else. Even though he did flee from the police
officer, there has to be something that--a willful conduct on his part, has to
be something that he intended to do and not that he was forced to do.

 

 Now, I'd just ask you to remember Chris' testimony. He came in here. 
He told you, "I could have pleaded guilty to this, but I didn't. This was not my
idea. I was in circumstance that I couldn't get out of. I would've plead guilty
and taken probation, but I didn't do this. This was--if this was my conduct,
if this was something that I was responsible for, I would have stepped up and
taken responsibility for it." So I ask you to consider that, ladies and
gentlemen . . . .

 

The Jury Charge
 


 The court submitted the case to the jury on separate charges. Both charges
instructed the jury on the presumption of innocence and the burden of proof. The charge
of evading arrest instructed the jury that "A person acts intentionally, or with intent, with
respect to the nature of his conduct or to a result of his conduct when it is his conscious
objective or desire to engage in the conduct or cause the result." The charge further
instructed the jury that they could convict Garcia of evading arrest if he "while using a
vehicle, intentionally flee from Larry Lopez, a person the Defendant knew to be a peace
officer who was attempting lawfully to arrest or detain the defendant . . . ."

 The charge on deadly conduct instructed the jury on the law of parties (5) and also
stated that:

 A person acts "knowingly," or with "knowledge," with respect to the
nature of his conduct or to circumstances surrounding his conduct when he
is aware of the nature of his conduct or that the circumstances exist. A
person acts knowingly, or with knowledge, with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause the
result. 

 

 A person acts "recklessly," or is "reckless," with respect to
circumstances surrounding his conduct or the result of his conduct when he
is aware of but consciously disregards a substantial and unjustifiable risk that
the circumstances exist or the result will occur. The risk must be of such a
nature and degree that its disregard constitutes a gross deviation from the
standard of care that an ordinary person would exercise under all the
circumstances as viewed from the defendant's standpoint.


 The charge further instructed the jury that they could convict Garcia of deadly
conduct if he "knowingly discharge[d] a firearm at or in the direction of a vehicle, and the
defendants were then and there reckless as to whether the vehicle was occupied . . . ."

 Although neither charge included an instruction on duress, the evading-arrest
charge defined "intentionally," and the jury could not convict Garcia of this offense unless
the State proved beyond a reasonable doubt that he acted intentionally. The charge on
deadly conduct defined "knowingly" and "recklessly" and stated that the jury could not
convict Garcia of this offense unless the State proved beyond a reasonable doubt he acted
knowingly and recklessly.

 We have reviewed the charges, the evidence, and counsel's jury argument, and find
that even if the instruction on duress was erroneously omitted from both charges, the
omission did not cause egregious harm. Issues one and three are overruled.

C. Intent


 By issue two, Garcia also asserts the evidence was "insufficient" to establish his
intent. (6) Garcia contends that "[n]o evidence corroborated [the] accomplice witness
testimony that [he] acted with the requisite intent." Garcia further argues that Hastings's
testimony was the only evidence showing that he acted with the requisite intent.

 As stated in our consideration of issue three, the charge defined the term
"intentionally" for the jury. "Intent may be inferred from acts, words and conduct of
accused." Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). "[M]ental
culpability is of such a nature that it generally must be inferred from the circumstances
under which a prohibited act or omission occurs." Id.

 Here, the non-accomplice evidence tends to connect Garcia to both offenses. 
Based upon his conduct as well as the circumstances surrounding the offenses, the jury
could infer that he: (1) intentionally evaded arrest; and (2) intended to assist or promote
the commission of deadly conduct. Issue two is overruled.

D. Ineffective Assistance of Counsel


 In issue four, Garcia argues his trial counsel was ineffective for failing to: (1)
request an accomplice-witness instruction; (2) request an instruction on duress; (3)
adequately investigate the case and present the defense; and (4) preserve error during the
State's final argument at the punishment phase.

Standard of Review


 In Ex parte Ellis, the court of criminal appeals stated that the benchmark for judging
any claim of ineffectiveness is: 

 whether counsel's conduct so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a
just result. In analyzing claims of ineffective assistance under the Sixth
Amendment, we apply the two-part framework announced by the United
States Supreme Court in Strickland v. Washington. Under this framework,
[Garcia] must prove by a preponderance of the evidence that: (1) his
counsel's performance was deficient; and (2) there is a reasonable
probability-one sufficient to undermine confidence in the result-that the
outcome would have been different but for his counsel's deficient
performance.

 

 To establish deficient performance, [Garcia] must show that counsel
was not acting as a reasonably competent attorney, and his advice was not
within the range of competence demanded of attorneys in criminal cases. 
[Garcia] must overcome the strong presumption that counsel's conduct fell
within the wide range of reasonable professional assistance. Therefore,
[Garcia] must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy. Although the
Supreme Court has said that strategic choices made after thorough
investigation of law and facts relevant to plausible options are virtually
unchallengeable[,] an attorney's cited strategy does not prevent us from
determining whether a specific act or omission was outside the wide range
of professionally competent assistance. The reasonableness of an
attorney's performance is judged according to the prevailing professional
norms, and includes an examination of all the facts and circumstances
involved in a particular case. Reviewing courts must be highly deferential to
trial counsel and avoid the deleterious effects of hindsight.

 

 Under the second part of the Strickland analysis, [Garcia] must
establish that the constitutionally deficient performance prejudiced his
defense-that is, he must show that there is a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding would have
been different. A reasonable probability is a probability sufficient to
undermine confidence in the outcome. When making this determination, any
constitutionally deficient acts or omissions will be considered in light of the
totality of the evidence before the judge or jury.


233 S.W.3d 324, 329-30 (Tex. Crim. App. 2007) (citations and quotation marks omitted).

1. Failure to Request Accomplice-Witness Instruction


 The failure to request an instruction on accomplice-witness testimony in some
circumstances may constitute ineffective assistance of counsel. See Ex parte Zepeda, 819
S.W.2d at 877. In Zepeda, aside from the accomplice-witness testimony, the other
evidence did not tend to connect Zepeda to the offense. The Zepeda court said, given the
state of the evidence which depended heavily on the accomplice testimony, counsel should
have requested an instruction on accomplice-witness testimony. Furthermore, the court
said that had the jury been informed that it could not convict Zepeda without corroboration
of the accomplice-witness testimony in light of the remaining evidence presented, there
was a reasonable probability a rational jury would not have convicted Zepeda. Counsel's
failure to request the instruction constituted ineffective assistance of counsel.

 The facts of this case are unlike those in Zepeda. Here, non-accomplice-testimony,
including Officer Lopez's eye-witness testimony as well as Garcia's testimony that the
weapons belonged to him, connected Garcia to both offenses. Considered in light of the
totality of the evidence before the jury, Garcia has failed to show there is a reasonable
probability that, but for counsel's unprofessional error, the result of the proceeding would
have been different had the trial court given the accomplice-witness instruction. There
being no reasonable probability under the Strickland standard, that the result of the trial
would have been different if the trial court had submitted the accomplice-witness
instruction, the error is not sufficient to undermine confidence in the outcome of the trial. 
Therefore, Garcia has failed to show that he received ineffective assistance of trial counsel
on this basis.

2. Failure to Request Instruction on Duress


 Assuming, without deciding, that counsel erred in his failure to request an instruction
on the defense of duress, Garcia must show counsel's error resulted in prejudice. Ex parte
Ellis, 233 S.W.3d at 330. None of the evidence other than Garcia's testimony suggested
that he was acting under duress. Garcia's self-serving testimony that he acted under
duress conflicts to some degree with that of Officer Lopez. Lopez testified that Garcia
"slammed" on his brakes in an attempt to get Lopez to hit him and tried to "knock" him off
of the road. Considered in light of the totality of the evidence before the jury, Garcia has
failed to show there is a reasonable probability that, but for counsel's unprofessional error,
the result of the proceeding would have been different had the trial court submitted the
instruction on the defense of duress. There being no reasonable probability under the
Strickland standard, that the result of the trial would have been different if the trial court
had given the instruction, the error is not sufficient to undermine confidence in the outcome
of the trial. Garcia therefor has failed to show he received ineffective assistance of trial
counsel.


3. Failure to Adequately Investigate the Case and Present the Defense

 Garcia argues that counsel was ineffective because he failed to request ballistics
test results on the spent bullet recovered from inside the Tahoe. He claims that if the
ballistics results showed the spent bullet was a .45 bullet, counsel could have used that
evidence for three purposes. First, he could have impeached Hastings's credibility
because (1) Hastings testified that he fired a .45 (7) into the air, not at the Tahoe, and (2) the
spent shell casings recovered from the scene of the shooting were from a .45 and a nine
millimeter. Second, the evidence would have undermined Hastings's characterization of
himself as non-violent and non-threatening. And, third, the evidence would have bolstered
his contention that Hastings was armed and dangerous, and had threatened him if he did
not follow his orders.

 If counsel's reasons for his conduct do not appear in the record and there is "at least
the possibility" that the conduct could have been grounded in legitimate trial strategy, we
will defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct
appeal. Garza v. State, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). Assuming, without
deciding, that counsel erred in failing to request the ballistics results, Garcia must show
counsel's error resulted in prejudice. Ex parte Ellis, 230 S.W.3d at 330. After considering
the totality of the evidence before the jury, we conclude that Garcia has not met his burden
of showing that there is a reasonable probability that, but for counsel's unprofessional
error, the result of the proceeding would have been different. Thus, counsel's failure to
request the ballistics test results is not sufficient to undermine confidence in the outcome
of Garcia's trial.


4. Jury Argument at the Punishment Phase

 Lastly, Garcia argues that counsel was ineffective because he failed to preserve
error when the prosecutor, during final argument at the punishment phase, made the
following comments to the jury:

 What about his [Garcia's] attempts to hit . . . [Officer Larry Lopez's] vehicle? 
Is that the sort of thing somebody's gonna do under duress if it's not their
idea, or did he see the officer about to overshoot and decide, "Well, I couldn't
get him to ram me from behind, I'll gonna [sic] run him off the roadway. I'll
ram him into somebody's house. I'll have him into a light pole. I don't care
about Larry Lopez' children or his wife. If he gets injured, that's fine with me,
I just want to get away," and when he [Garcia] got out of the vehicle, did he
say, "Hey, I'm glad you're here, this wasn't any of my doing." No, he
lawyered up and he came in here and he told you this incredible story
because-


At that point, counsel objected as follows:


 Counsel: Your Honor, I object.

 

 The Court: Just argue the evidence, sir.


 Counsel: I object that he's commenting on my client's Fifth Amendment right
to remain silent, Judge.

 

 The Court: Correct. Just argue the evidence, Mr. Mann.

 

 Counsel did not ask the trial court to instruct the jury to disregard the comments. 
Despite counsel's failure to properly preserve the error, Garcia has not met his burden of
showing that there is a reasonable probability that, but for counsel's unprofessional error,
the result of the proceeding would have been different. Thus, counsel's failure to request
an instruction to disregard the comments is not sufficient to undermine confidence in the
outcome of Garcia's trial. We conclude Garcia has failed to show he received ineffective
assistance of trial counsel. We therefor overrule issue four. 

 The trial court's judgments are affirmed.

 



 


 ROSE VELA

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 21st day of February, 2008.
1. See Tex. Penal Code Ann. § 38.04 (Vernon 2003).
2. See Tex. Penal Code Ann. § 22.05(b)(1) (Vernon 2003).
3. Garcia is correct in complaining of fundamental error. The court of criminal appeals has stated
"[T]hat if no proper objection was made at trial to the jury charge, an appellant must claim that the alleged
error was fundamental." Druery v. State, 225 S.W.3d 491, 505 (Tex. Crim. App. 2007).
4. The accomplice-witness rule provides: "A conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending to connect the defendant with the offense
committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex.
Code Crim. Proc. Ann. art. 38.14.
5. The charge stated, in relevant part, that:

 

 A person is criminally responsible for an offense committed by the conduct of another
if, acting with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere
presence alone will not constitute one a party to an offense.


 Under the law of parties, if you find from the evidence beyond a reasonable doubt
that . . . Jacob Gonzalez, did then and there intentionally and knowingly, commit Deadly
Conduct and that . . . [Garcia] then and there knew of the intent, if any, of Jacob Gonzalez
to commit Deadly Conduct and . . . [Garcia] acted with intent to promote or assist the
commission of the offense of Deadly Conduct and by encouraged, directed, aided or
attempted to aid Jacob Gonzalez to commit the offense of Deadly Conduct, you will find . .
. [Garcia] guilty of Deadly Conduct . . . .
6. Garcia also asserts the evidence was "insufficient" to establish his intent
. To the extent Garcia's
contention amounts to an attempt to superimpose a legal or factual sufficiency review upon the accomplice-witness standard, the court of criminal appeals has rejected this type of contention in Cathey v. State, 992
S.W.2d 460, 462 (Tex. Crim. App. 1999). 
7. Hastings testified that Garcia gave him a "black handgun, probably a .45 or a .40. I don't really know
which gun it was."