**AFFIRM; and Opinion Filed December 31, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00160-CR

### DEJUAN MCLEMORE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1271083-V**

## MEMORANDUM OPINION
Before Justices Bridges, Francis, and Myers
Opinion by Justice Bridges

A jury convicted appellant Dejuan McLemore of aggravated assault with a deadly weapon. He pleaded true to an enhancement paragraph,[1] and the jury assessed punishment at twenty-three years' confinement. On appeal, McLemore argues: (1) the evidence is legally insufficient to support his conviction; (2) the court erred by admitting two photographs; (3) the court erred by overruling his motion for mistrial; (4) the State improperly argued outside the record during both closings of the guilt/innocence and punishment phases; and (5) the court allowed impermissible hearsay testimony during punishment. We affirm the trial court's judgment.

---

[1] McLemore was convicted of possession of a controlled substance with intent to deliver (four grams) in December 1999.

**Background**

On April 11, 2012, Kenneth Eakles was in his front yard with two friends, James Bradfield and Kevin Miles. Bradfield was working on Eakles's truck. Eakles briefly went to his backyard, and in his absence, a man identified by Bradfield and Miles as "D-Dub," approached Bradfield for money. Bradfield testified he owed "D-Dub" money for buying auto parts to repair a car. Bradfield said he did not have the money "at this moment . . . but give me a few minutes." "D-Dub" did not wait, but instead hit Bradfield with a pistol.

When Eakles returned to the front yard, he saw blood coming from Bradfield's mouth and he seemed dazed. Eakles told the man, whom he did not know, to leave because he did not want fighting in front of his house. Eakles also said he was going inside to call the police, and "D-Dub" said, "I wouldn't do that, old man."

As Eakles walked away, he heard two gunshots and the third hit him in the back. He turned around and said, "You done shot me." Bradfield saw "D-Dub" shoot the gun one time and then he heard the second and third shots. Miles saw "D-Dub" shoot the gun three times, and he said two shots were fired directly towards Eakles's home.

D-Dub immediately jumped into a Lincoln town car and drove away. Although there were some discrepancies among the witnesses about the color of the car, Eakles, Bradfield and Miles all agreed "D-Dub" drove away in a Lincoln after the shooting.

Eakles went inside his home, and told his son Keith he had been shot. When Keith went outside, Bradfield and Miles said, "D-Dub shot your dad." Keith then looked up the street and saw "D-Dub's" car driving away.

Eakles was taken to the hospital where he immediately underwent surgery. The bullet entered his back and exited near his neck.

When police arrived, Bradfield told officers "D-Dub" shot Eakles. Officer Nathan Kisner learned from witnesses the alleged shooter's first name was Dejuan. "D-Dub" was later confirmed to be McLemore's nickname.

After receiving information about the suspect, Detective Rudy Contreras assembled a photo lineup. At that time, he believed the suspect was Dejuan Sessions; however, neither Miles nor Bradfield identified the shooter from the first lineup. Detective Contreras later talked with Eakles's son, who said the possible suspect was Dejuan McLemore. Based on this new information, Detective Contreras assembled another photo lineup. Miles and Bradfield then identified McLemore as the shooter.

McLemore was arrested about six months after the issuance of an arrest warrant. A jury convicted him of aggravated assault with a deadly weapon. After pleading true to an enhancement paragraph, the jury assessed punishment at twenty-three years' confinement. This appeal followed.

### Sufficiency of the Evidence

In his first issue, McLemore argues the evidence is insufficient to support his conviction because (1) witnesses provided inconsistent testimony about the color of the Lincoln and the type of gun used in the offense; (2) Eakles could not identify McLemore; and (3) officers failed to conduct DNA testing or corroborate witness statements. The State responds two witnesses identified McLemore as the shooter, and the jury was free to resolve any conflicts in the evidence in favor of the State; therefore, the evidence is legally sufficient to support his conviction.

In evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt.

*Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

McLemore committed the offense of aggravated assault with a deadly weapon if he intentionally, knowingly, or recklessly caused bodily injury to Eakles and used or exhibited a deadly weapon during the assault. TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (West Supp. 2015). A deadly weapon is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." *Id*. § 1.07(a)(17)(A).

McLemore does not contest the intent element of the crime or that a deadly weapon was used. Rather, he focuses on Eakles's inability to positively identify him, discrepancies in witness testimony, and the police investigation of the crime.

It is well-established a conviction may be based on the testimony of a single eyewitness. *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)). Here, two eyewitnesses identified McLemore as the shooter in a photo lineup and at trial. Further, Eakles's son testified McLemore later expressed remorse for the shooting and said he did not intend to do it. Thus, Eakles's inability to identify McLemore does not render the evidence legally insufficient.

The evidence is likewise not legally insufficient because witnesses provided different color descriptions of the Lincoln and the type of gun used in the incident. Eakles testified he could not tell if the car was "burgundy, tan or something." Bradfield described it as "some sort of burnt orange with a tan colored top . . . copper like color sort of." Miles said it was burgundy. Regardless, all agreed McLemore drove away in a Lincoln. As for the gun, Miles described the gun as a nine millimeter; however, Detective Will Vick testified the gun used was a .40.

–4–

Detective Vick explained that to a lay person, a .40 and a nine millimeter gun would look "pretty similar." We must defer to the jury's resolution of conflicting evidence and may not substitute our judgment concerning the weight and credibility of the evidence. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). As such, we assume the jury weighed the conflicting evidence and resolved the conflicts, if any, in favor of the State.

And finally, we do not review the sufficiency of the police investigation; rather, we review the evidence presented at trial. *See Quinonez v. State*, No. 06-07-00016-CR, 2007 WL 2608833, at *4 (Tex. App.—Texarkana Sept. 12, 2007, pet. ref'd). A reviewing court must not use a "divide and conquer" approach, separating each piece of evidence offered to support a defendant's conviction, followed by speculation on the evidence the State did not present. *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012). As such, McLemore's attacks on the police investigation are not relevant to our analysis, and we give proper deference to the jury's verdict, which is legally sufficient to support McLemore's conviction. We overrule his first issue.

### Admission of Two Photographs

In his second issue, McLemore argues the trial court abused its discretion by admitting State's exhibits 4 and 6 because the photographs, which depicted up-close views of the bullets entry and exit wound, were cumulative and more prejudicial than probative. The State responds the trial court properly admitted the photographs because they showed nothing more than the nature of the crime and were not so inflammatory as to be more prejudicial than probative.

We review a trial court's decision to admit or exclude evidence, including photographs, for an abuse of discretion. *Young v. State*, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009). The trial court's decision may be disturbed only when it falls outside the zone of reasonable disagreement. *Id.*

Texas Rule of Evidence 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010).

A court may consider several factors in determining whether the danger of unfair prejudice substantially outweighs the probative value of photographs. *Young*, 283 S.W.3d at 874. These factors include the number of exhibits offered, their gruesomeness, their size and detail, whether they are in color or black and white, whether they are close-up, and whether the body is depicted clothed or naked.

Here, the State only admitted four photos of Eakles from the hospital. Two photographs depict the entrance wound, bandaged with dried blood, and two photographs show the exit wound. McLemore did not object to exhibit 3, which actually shows McLemore laying in the hospital bed, the exit wound bandaged, tubes attached to him, and a large amount of blood on the bedding. Exhibit 4, which drew objection, is simply a closer view of exhibit 3, but it shows less of the tubes and less blood. Similarly, exhibit 5, which was admitted without objection, shows the entry wound on his back, with visible tubes and blood on the bedding. Exhibit 6 is a close-up view of the entry wound, but is not gruesome. While exhibits 4 and 6 may have been unpleasant for some jurors to see, they "depict nothing more than the reality of the brutal crime committed." *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999). Thus, the photographs were not prejudicial.

Further, a photograph is generally admissible if verbal testimony as to matters depicted in the photographs is also admissible. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App.

–6–

1997). In other words, if the verbal testimony is relevant, photographs of the same are also relevant. *Id*. Here, Eakles's testimony about his injuries was relevant, admissible, and did not draw any objection from McLemore. Consequently, the trial court did not abuse its discretion by admitting photographs that depicted the nature of the wounds inflicted. We overrule McLemore's second issue.

### Motion for Mistrial

In his third issue, McLemore argues the trial court erred by denying his motion for mistrial after the State argued outside the record during closing argument of the guilt phase of trial. The State responds the trial court's instruction to disregard cured any alleged error.

During trial, the State and the defense argued about the content of an affidavit Miles gave on the day of the shooting. The affidavit stated the shooter was an "unknown person." On redirect, Miles clarified he never told police McLemore was unknown to him, but only that he did not know his name. Miles told officers he had seen McLemore around the neighborhood and could recognize him.

During closing arguments, the State argued the following:

> Heard from Kevin Miles again. Another man of good character, credibility. Gave the affidavit the day of the shooting. Seen him around the neighborhood before. I don't know his name. That's what he said. As much as the defense wants you to believe he said the shooter was unknown to him, that's in his affidavit the day of the shooting. The only part of the affidavit the defense contested. Everything else he said, didn't hear any argument from defense about it.

McLemore objected to the "mischaracterization of the evidence," and the trial court sustained the objection. The trial court instructed the jury to "disregard the last argument," but denied a motion for mistrial.

A mistrial is an extreme remedy for prejudicial events occurring during the trial process. *Edwards v. State*, 106 S.W.3d 833, 838 (Tex. App.—Dallas 2003, pet. ref'd). Only when it is

apparent from the record that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted. *Id.* The decision to deny a motion for mistrial is within the sound discretion of the trial court.

We generally consider instructions to the jury to be sufficient to cure most improprieties that occur during trial. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). And we generally presume the jury follows the judge's instructions. *Id.*

Because the trial court instructed the jury to disregard the argument, we not only presume the jury obeyed, but also conclude the instruction ameliorated any harm. *See Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994) (an instruction to disregard will cure error unless the prosecutor's remark was so inflammatory that its prejudicial effect could not reasonably be overcome by such an instruction). In order for improper argument to absolutely mandate reversal, it must be extreme or inject new and harmful facts into the record. *Id.* Neither was the case here. The record shows the State questioned Miles about his affidavit and although the affidavit said the shooter was an "unknown person," Miles clarified on redirect that the shooter was not an unknown person to him but that he did not know the shooter's name. Thus, even assuming the jury ignored the court's instruction to disregard, the State's argument did not inject new and harmful facts into the record. We overrule McLemore's third issue.

## Improper Jury Arguments

In his fourth issue, McLemore argues the trial court erred by allowing the State to make arguments outside the record during closing argument. The State responds the argument was a reasonable deduction from the evidence and a plea for law enforcement.

The trial court's ruling on an objection to improper jury argument is reviewed for an abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). The purpose

of closing argument is to assist the fact-finder in drawing proper conclusions and inferences from the evidence. *Gaddis v. State*, 753 S.W.2d 396, 400 (Tex. Crim. App. 1988). Argument that (1) summarizes the evidence, (2) is a reasonable deduction from the evidence, (3) answers argument of opposing counsel, or (4) is a plea for law enforcement, is permissible and proper. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Counsel is generally given wide latitude to draw inferences from evidence, so long as they are reasonable, fair, legitimate, and offered in good faith. *Gaddis*, 753 S.W.2d at 398. To constitute reversible error, the jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence. *Gaddis*, 753 S.W.2d at 398.

During closing argument, the State argued the following:

> I'm here to tell you this morning there is not a single thing any of the politics do that will be more important on crime in our community than what the 13 of you have the opportunity to do today. You have the opportunity to stand up for Kenneth Eakles. Those witnesses who testified knowing these guys live in their neighborhood are some of the bravest witnesses you will see. They're not afraid. This is what happened. We're taking our neighborhood back.

The trial court overruled McLemore's objection that the argument was outside the record.

The trial court properly overruled his objection. The jury heard testimony that McLemore shot an unarmed, older man in the back for telling him to get off his property. Eakles knew the shooter lived in the neighborhood; therefore, it was a reasonable deduction for the State to argue Eakles's was brave to testify against him.

Further, the State's argument was a permissible plea for law enforcement. In making such a plea for law enforcement, the prosecutor may encourage the jury to do something about crime. *See Hudson v. State*, 128 S.W.3d 367, 377–78 (Tex. App.—Texarkana 2004, no pet.). By arguing, "We're taking our neighborhood back," the State was encouraging the jury to support Eakles's bravery and help him fight back against crime in his neighborhood. Because

–9–

the State's argument was proper, the trial court did not abuse its discretion by overruling McLemore's objection. We overrule his fourth issue.

In his sixth issue, McLemore argues the trial court abused its discretion by allowing the State to argue outside the record during closing argument of the punishment phase about how close McLemore came to killing Eakles. Specifically, the State argued, "I've prosecuted murders the same as that. Three inches - - ." The State concedes reference to previous murders tried by the prosecutor was outside the record, but argues any error was harmless. McLemore argues his substantial rights were harmed.

When jury argument falls outside permissible areas, an appellate court will not reverse unless the error is harmful. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Improper jury argument is reviewed under Texas Rule of Appellate Procedure 44.2(b) and must be disregarded unless it affected appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000). In determining whether McLemore's substantial rights were affected, we consider: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the misconduct. *Martinez*, 17 S.W.3d at 693–94.

We agree with the State the error was harmless. The State argued without objection, "And if not by the grace of God and a few inches, Mr. Eakles would be dead. Let's not give him the benefit of the doubt or the benefit of the fact that he missed by a few inches of killing that man." Because the prosecutor had already mentioned how close McLemore came to killing Eakles, the statement about prosecuting previous murders was a comment on the reality of that possibility and was not a comment so severe as to affect substantial rights. Further, given the eye witness testimony supporting the conviction, the record provides fair assurance the State's

argument did not influence or had but a slight effect on the jury's sentence. McLemore's sixth issue is overruled.

**Hearsay**

In his fifth issue, McLemore argues the trial court abused its discretion by allowing the State, during the punishment phase, to illicit hearsay from a witness. The State responds the testimony was not offered for the truth of the matter asserted, and alternatively, error, if any, was harmless.

Sergeant Richard Foy testified a crime response team went to an apartment on November 28, 2012 after receiving a tip that McLemore was at the location. At the time, McLemore had an arrest warrant for the April 11, 2012 shooting.

When officers arrived at the location, a man was standing outside. When the State asked Sergeant Foy what the man said, McLemore objected. The trial court overruled the objection. Sergent Foy said the man told him the "target was inside."

Assuming without deciding the trial court erred by admitting the statement, we conclude McLemore was not harmed. When the trial court errs by admitting hearsay, we apply a harm analysis under rule 44.2(b) and must disregard the error if it does not "affect substantial rights." *Garcia*, 126 S.W.3d at 927. As stated previously, based on two eyewitnesses and McLemore's admission to Eakles's son, the evidence of guilt against McLemore was strong. Further, Sergeant Foy testified without objection, that after the man gave permission for officers to enter the apartment, they went inside and identified McLemore. Therefore, the State did not need the complained-of testimony to prove that McLemore was inside the apartment. Accordingly, after examining the record as a whole, any alleged error did not influence the jury, or had but a slight effect. TEX. R. APP. P. 44.2(b). We overrule his fifth issue.

–11–

**Conclusion**

The judgment of the trial court is affirmed.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
Tᴇx. R. Aᴘᴘ. P. 47

150160F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DEJUAN MCLEMORE, Appellant

No. 05-15-00160-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1271083-V.
Opinion delivered by Justice Bridges.
Justices Francis and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of December, 2015.